## PURE OIL CO. v. PETROLITE CORPORATION, Limited.

### No. 11558.

Circuit Court of Appeals, Fifth Circuit.

Dec. 12, 1946.

Rehearing Denied Jan. 2, 1947.

Writ of Certiorari Denied March 10, 1947.

See 67 S.Ct. 970.

David T. Searls, of Houston, Tex., for appellant.

Brady Cole and E. E. Townes, both of Houston, Tex., and Leonard S. Lyon, of Los Angeles, Cal., for appellee.

Before SIBLEY, HUTCHESON, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

Appellee, Petrolite Corporation, Ltd., the owner of patented processes for dehydrating and desalting of crude petroleum and also the owner of certain equipment designed for use under said patented processes in treating crude petroleum oil, granted to the Pure Oil Company a license to use said patented processes, and on the same day leased to the Pure Oil Company the equipment aforementioned.

On May 22, 1944, Appellant filed a complaint, which complaint was dismissed on the ground that it failed to state a cause of action entitling the Plaintiff to relief. In dismissing the complaint, the lower Court filed an opinion,[1] stating in part:

"(a) On April 22, 1930, Plaintiff, a corporation, was engaged in the business of producing, purchasing, transportation and storing petroleum oil, and by an agreement of that date acquired from Defendant a license to treat its petroleum oil in accordance with certain 'dehydrating' process patents owned by Defendant. (For brevity, this Agreement is called License Agreement). By another agreement of the same date, Plaintiff leased from Defendant cer-

tain equipment for use in connection with such 'dehydrating' process. (For brevity, this Agreement is called Leasing Agreement.)

"(b) The parties went forward under such Agreements until they were, at Plaintiff's election, terminated on May 1, 1944. The Leasing Agreement contained a paragraph (Paragraph 5), about the meaning of which a dispute has arisen. Such Paragraph is as follows:

" 'Lessee agrees upon termination hereof howsoever, to return to Lessor the equipment leased hereunder in good and operative condition, the results of ordinary careful use excepted, and to permit and in every way assist Lessor in entering upon Lessee's premises and removing said equipment therefrom at the sole cost and expense of Lessor; provided, however, that Lessee shall have the right at any time prior to the termination hereof, to purchase said equipment and continue to operate same, subject to the terms of a sales and purchase agreement to be entered into between the parties hereto, by paying to Lessor a sum equal to the cost of new equipment of similar grade and construction, f.o.b. Houston, Texas, less ten per cent (10%) per year depreciation during the time said equipment has been in existence.'

"(c) It is also set forth that while such agreements were in force, Plaintiff gave Defendant notice of its election to purchase certain equipment furnished it under such agreements, and on April 28, 1944 (I quote):

" 'made a legal tender to Defendant, at its office in Houston, Texas, by cashier's check in the amount of $25,500.00, being the sum due to Defendant for the purchase and payment of said equipment under the terms and provisions of said lease agreement, and Defendant accepted such tender,' "and that Plaintiff was and is ready, able, and willing to pay any balance owing. Plaintiff then says:

" 'Defendant has filed and refused to recognize that Plaintiff had the right to purchase said equipment by payment of the purchase price specified in the lease agreement, and had made demand upon Plaintiff to return all of said equipment. Defendant has asserted that it was necessary for the parties to the lease agreement to agree upon the terms of a sale and purchase agreement before Plaintiff would have the right to purchase said equipment; and by letter of May 1, 1944, Defendant has tendered to Plaintiff a proposed sales agreement conveying such equipment to Plaintiff to be used under the terms and subject to the conditions and royalty payments prescribed by the license agreement of April 22, 1930, and providing that Defendant shall have a ten day option to repurchase said equipment from Plaintiff and to remove it from Plaintiff's premises. In the same letter in which Defendant tendered such sales agreement to Plaintiff, Defendant gave Plaintiff notice that Defendant had elected to exercise its option to repurchase the same and demanded immediate possession of all of the equipment; and Defendant returned to Plaintiff said cashier's check in the amount of $25,500.00 as the amount of the repurchase price due from Defendant under the proposed sales agreement. Plaintiff has refused to accept the sales agreement and cashier's check tendered with the letter of May 1, 1944.'

"(d) Plaintiff brings this suit for a declaratory judgment, praying a decree:

" 'That Plaintiff, as lessee in the lease agreement of April 22, 1930, had the right, at any time prior to the termination of such lease agreement, to purchase all of the equipment furnished it thereunder by paying to Defendant, as lessor, a sum equal to the cost of new equipment of similar grade and construction, f.o.b. Houston, Texas, less ten per cent per year depreciation during the time said equipment had been in existence;

" 'That Plaintiff has title to the equipment listed in Exhibit "C" attached to the complaint herein, or that Plaintiff will obtain the title to such equipment upon paying to Defendant the amount determined by the Court herein to be the purchase price under the lease agreement of April 22, 1930; that the license and lease agreements of April 22, 1930, have been canceled and terminated; and that there is no obligation under any existing and valid agreement requiring Plaintiff to pay royalties to Defendant for the use of such equipment;

" 'That, in the alternative, Plaintiff is entitled to have Defendant execute and deliver to it a bill of sale conveying and transferring to Plaintiff all of the equipment listed in Exhibit "C" attached hereto, without any limitation or qualification upon such transfer and sale, upon the payment by Plaintiff to Defendant of the amount determined by the Court herein to be the purchase price under said lease agreement.'

"1. In the argument and briefs, Plaintiff takes the position that since it is in possession of the equipment, and has tendered and/or is willing to pay the price therefor fixed in Paragraph 5, it has title thereto, or the absolute right to acquire title thereto, etc. But in order to so hold, a part of the wording of Paragraph 5 must be put aside and ignored, i.e., the wording which says that Plaintiff is entitled: 'to purchase such equipment and continue to operate same, subject to the terms of a sales and purchase agreement to be entered into between the parties hereto.'

"This may not be done. It must be assumed that the parties had a purpose in placing such wording in the agreement. While it is not necessary to point to such purpose, I think the purpose is clearly shown by Plaintiff's pleadings and the agreements themselves attached thereto. Clearly the parties had a purpose, knew the meaning of the words they used and intended to be bound thereby. The agreements must be enforced as written.

"The fact that Defendant has tendered Plaintiff a form of sales and purchase agreement, to the provisions of which Plaintiff has not agreed, and the fact that the parties may never agree to a sales and purchase agreement, does not give Plaintiff title or the right to take title to the equipment. Nor is Plaintiff's position that it has possession of the equipment and has tendered the price therefor, and has, therefore, title or the right to take title, meritorious. Its possession of the equipment is under and by virtue of the agreements, and cannot ripen into title or the right to take title, except in accordance with the Agreements. The Agreement does not call for the execution of a simple Bill of Sale, but for a sales and purchase agreement, making provision not only for the passing of the title to the equipment, but its operation after title has passed.

"An examination of Plaintiff's amended complaint will also disclose that it does not make a case for equitable relief against the plain provisions of Paragraph 5.

"It follows that Plaintiff's suit should be dismissed."

The Plaintiff filed a subsequent amendment, seeking to show a waiver of the provisions in Section 5 of the lease agreement by reason of the fact that the sales agreement tendered by the Defendant was a subterfuge and a sham, unreasonable, and contrary to the right given the Plaintiff in the contract to purchase the equipment, but the Court below remained of the opinion that the complaint had failed to state a cause of action entitling the Plaintiff to relief and a final order of dismissal was entered October 8, 1945.

We think the lower Court reached the correct result and that little, if anything, need be added to that Court's memorandum.

The Court could not make a new contract but could only construe one which the parties have made. Appellant asks us to separate the right to purchase the equipment from the right to continue to operate same, but if such had been the intent and purpose of the parties they could easily have said so. We think, with the lower Court, that the right to purchase the equipment was contingent upon the entering into of a sales and purchase agreement. The parties have failed to enter into such an agreement.

We are not here concerned with the fact that the Appellee tendered a sales and purchase agreement reserving to itself an option to repurchase from Appellant the equipment and at the same time exercising the option then and there to repurchase it, and that such tendered agreement was arbitrary, unreasonable, and contrary to the spirit and intent of the lease agreement in this case. This is not a suit by Petrolite to recover the equipment wherein any estopple created by its arbitrary action could be invoked.

The decree of the lower Court is

Affirmed.